b

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

TIMOTHY DEMITRI BROWN,                CIVIL DOCKET NO. 1:21-CV-00919
Plaintiff

VERSUS                                DISTRICT JUDGE DRELL

DUSTIN TALBOT, ET AL.,
Defendants                            MAGISTRATE JUDGE PEREZ-MONTES

---

### REPORT AND RECOMMENDATION

Before the Court are a Motion to Remand (ECF No. 6), Motions to Compel and for Sanctions (ECF Nos. 20, 42, 56), and a Motion for Partial Summary Judgment (ECF No. 48) filed by Plaintiff Timothy Demitri Brown ("Brown"). Also pending are five "Motions to Join" filed by non-parties–Damon Causey (ECF No. 21), Tre'vin Bob (ECF No. 36), Stephen Young (ECF No. 37), Russell Guillory (ECF No. 38), and Kevin Cooley (ECF No. 39).

Because this Court lacks subject matter jurisdiction over this action, IT IS RECOMMENDED that Brown's Motion to Remand (ECF No. 6) be GRANTED.

Brown's Motions to Compel and for Sanctions (ECF Nos. 20, 42, 56) and Motion for Partial Summary Judgment (ECF No. 48), as well as the Motions to Join (ECF Nos. 21, 36, 37, 38, 39), should all be DENIED FOR LACK OF SUBJECT MATTER JURISDICTION.

## I.    Background

This lawsuit is–at its core–a state law claim for legal malpractice. Brown sued two employees of the Office of the Federal Public Defender, attorneys Dustin Talbot

("Talbot") and Peter Black ("Black"), in the Louisiana Ninth Judicial District Court in Rapides Parish, Louisiana.[1] Talbot and Black represented Brown in his 2020 post-conviction sentence recalculation under the First Step Act, Pub. L. 115-391, 132 Stat. 5194 (2018) (§ 401(a) & (c)) in 2019-2020. *See United States v. Timothy D. Brown,* 1:01-CR-10012-01 (W.D. La.), *aff'd,* (5th Cir. 2004), ECF No. 638.

Brown was convicted in 2002 by a jury in the United States District Court for the Western District of Louisiana, Alexandria Division, on five drug offenses and three counts of money laundering, along with co-defendants Christopher Michael Brown ("Christopher"), Kenneth Wayne Pearson ("Pearson"), and Thurston Washington ("Washington"). Brown was sentenced to life imprisonment. Brown's convictions and sentences were affirmed by the United States Fifth Circuit Court of Appeals in 2004. *See United States of America v. Timothy D. Brown,* 1:01-CR-10012-01 (W.D. La.), *aff'd* (5th Cir. 2004), ECF Nos. 217, 273, 367, 370-72; *see also United States v. Brown,* 86 Fed. Appx. 749, 2004 WL 243491 (5th Cir. 2004).

In 2005, Brown filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. *Brown,* 1:01-CR-10012-01, ECF No. 385. That Motion was denied. *Brown,* 1:01-CR-10012-01, ECF Nos. 388, 407.

In 2008, Brown filed a Motion for Resentencing under 18 U.S.C. § 3582(C)(2), through retroactive application of the sentencing guidelines to crack cocaine offenses.

---

[1] Talbot and Black are attorneys employed by the Federal Public Defender for the Western and Middle Districts of Louisiana.

*Brown,* 1:01-CR-10012-01, ECF No. 448.  That Motion was also denied.  *Brown,* 1:01-CR-10012-01, ECF No. 475, 555.  Brown's appeal of that ruling was dismissed for lack of prosecution.  *Brown,* 1:01-CR-10012-01, ECF No. 592.

In 2015, Brown filed a second Motion to Reduce Sentence (*Brown,* 1:01-CR-10012-01, ECF No. 582) pursuant to the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018) (§ 401(a) & (c)).[2]  The Federal Public Defender's Officer was

---

[2] The First Step Act of 2018, § 401(a), amended the felony drug offense sentencing enhancement in 28 U.S.C. § 841(b)(1).  *See United States v. Strother,* 854 Fed. Appx. 627, 629 (5th Cir. 2021).

Section 2 of the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (2010), entitled Cocaine Sentencing Disparity Reduction, increased the drug quantity triggering the five-year mandatory minimum for crack offenses from 5 grams to 28 grams, and increased the drug quantity triggering the ten-year mandatory minimum from 50 grams to 280 grams.  *See United States v. Batiste,* 2019 WL 5811293, at \*2 (E.D. La. 2019), *aff'd in part, remanded in part,* 980 F.3d 466 (5th Cir. 2020).  Section 404(a) of the First Step Act of 2018 made these new mandatory minimum rules retroactive to "covered offenses" – offenses to which the modified statutory penalties applied and which were committed before August 3, 2010.  Section 404(b) of the First Step Act authorizes "[a] court that imposed a sentence for a covered offense may, on motion of the defendant ... impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed."  *Batiste,* 2019 WL 5811293, at \*2.

In *United States v. Hegwood,* the United States Fifth Circuit Court of Appeals explained resentencing under the First Step Act:

> The First Step Act grants a district judge limited authority to consider reducing a sentence previously imposed.  The calculations that had earlier been made under the Sentencing Guidelines are adjusted "as if" the lower drug offense sentences were in effect at the time of the commission of the offense. That is the only explicit basis stated for a change in the sentencing.  In statutory construction, the expression of one thing generally excludes another. *TRW Inc. v. Andrews,* 534 U.S. 19, 28-29, 122 S. Ct. 441, 151 L. Ed.2 d 339 (2001).  The express backdating only of Sections 2 and 3 of the Fair Sentencing Act of 2010 — saying the new sentencing will be conducted "as if" those two sections were in effect "at the time the covered offense was committed" —

3

appointed to represent Brown.  ECF No. 584.  Assistant Federal Public Defender Talbot filed a brief on behalf of Brown, arguing for a sentence reduction.  ECF No. 1-6; *Brown,* 1:01-CR-10012-01, ECF No. 638.  Black, also an Assistant Federal Public Defender, appears to have assisted Talbot with research and writing in Brown's case. ECF No. 1-5.

On January 31, 2020, Brown's Motion to Reduce Sentence was denied.  *Brown,* 1:01-CR-10012-01, ECF No. 643.  On December 24, 2020, that sentence was affirmed on appeal by the United States Fifth Circuit.  *Brown,* 1:01-CR-10012-01, ECF No. 711.

On December 16, 2020, Brown filed this action against Talbot and Black in the Louisiana Ninth Judicial District Court in Rapides Parish, alleging they committed malpractice and fraud in their representation of him in his First Step Act sentence reduction proceeding.[3]  ECF No. 1-2.

---

supports that Congress did not intend that other changes were to be made as if they too were in effect at the time of the offense. . . .

The mechanics of First Step Act sentencing are these. The district court decides on a new sentence by placing itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act. The district court's action is better understood as imposing, not modifying, a sentence, because the sentencing is being conducted as if all the conditions for the original sentencing were again in place with the one exception. The new sentence conceptually substitutes for the original sentence, as opposed to modifying that sentence.

934 F.3d 414, 418-19 (5th Cir. 2019), *cert. den.*, 140 S. Ct. 285 (2019).

[3] While incarcerated, Brown has sued or otherwise harassed others who have been involved in his cases.  See *Brown v. Cole, et al.,* 2:94-MC-01558 (W.D. La.); *Brown v. Cole,* 1:94-MC-

In his Petition, Brown complains that he instructed Defendants not to file any documents on his behalf, unless they addressed the drug quantity and the Commerce Clause, and not to file any documents under seal.  ECF No. 1-2 at 3.  Brown alleges Defendants filed documents under seal, conceded the drug quantity, and did not address the Commerce Clause issue.  ECF No. 1-2 at 3.  Brown further alleges that, in contravention of his explicit instructions, Talbot did not talk to Brown before filing the documents, and did not provide Brown with the documents provided by the Government or discuss them with Brown.  ECF No. 1-2 at 4.  Brown alleges he was not made aware of the documents until after the Court ruled against him on February 3, 2020.  ECF No. 1-2 at 4.

Afterward, Talbot explained to Brown that the Court had ordered the documents be filed under seal.  ECF No, 1-2 at 4.  Black subsequently called Brown and discussed Talbot's actions, informed Brown the Louisiana Session Statute was void, and told Brown he and Talbot were "legally authorized" to make decisions contrary to his instructions.  ECF No. 1-2 at 4-5.  Brown contends he then sent Black a letter asking that he argue the jury had found "no specific drug amount," and that the Government had conceded that point.  ECF No. 1-2 at 5.  Brown alleges that Black then filed a Motion to Withdraw on the ground that Brown was asking him to make frivolous arguments.  ECF No. 1-2 at 5.

---

01660 (W.D. La.); *Brown v. Cole, et al.,* 1:95-CV-01611 (W.D. La.); *United States v. Brown*, 1:04-CV-00410 (W.D. La.).

Brown asserts that Defendants' acts and omissions, in failing to obey Brown's explicit instructions, in consenting to an issue that Brown had instructed them to contest, and in refusing to argue valid law (the Louisiana Session Statute), constitute legal malpractice. He seeks any relief to which he is entitled, and requested class certification. ECF No. 1-2. Brown's Motion to Certify Class was denied. ECF No. 31.

Defendants filed an Answer, asserting numerous defenses: failure to state a claim; immunity under federal and state law; a "good faith" bar; failure to show Brown's convictions have been reversed or "invalidated"[4]; the "honest exercise of professional judgment"; comparative fault of third parties; good faith; contributory negligence, assumption of the risk, and failure to mitigate by Brown; lack of exhaustion; estoppel; prescription, peremption, laches, and repose; Brown's failure to avoid the harm complained of; all affirmative defenses set forth in Fed. R. Civ. P. 8(c); and attorney's fees and costs. ECF No. 18.

Defendants removed. Their Notice of Removal alleges jurisdiction under 28 U.S.C. §§ 1331, 1346, and 1367 "because the claims asserted arise under a federal law, are against federal officers/employees, and the court may exercise supplemental jurisdiction over any alleged state law claims." ECF No. 1, ¶ 13. Defendants further state in their Notice of Removal that they "have the right to remove under 28 U.S.C. § 1442." Finally, Defendants claim "this matter is within the jurisdiction of this Court

---

[4] Defendants allege the defense that Brown's conviction has not been reversed or invalidated without citing *Heck v. Humphrey,* 512 U.S. 477 (1994). ECF No. 18 at 3.

pursuant to 28 U.S.C § 1331 (federal question), § 1346 (United States as defendant), § 1367 (supplemental jurisdiction), § 1442 (federal officers or agencies sued), and § 1446 (procedure for removal of civil actions)." ECF No. 1 at 7.

Brown filed a Motion to Remand, titled "Plaintiff's Objections to Notice of Removal." ECF No. 6. Brown then filed Motions to Compel and for Sanctions, seeking responses to his interrogatories (ECF No. 20, 42, 56), and a Motion for Partial Summary Judgment (ECF No. 48).

Causey, an inmate in the United States Penitentiary in Pollock, Louisiana U.S.P. Beaumont, filed a "Motion to Join," seeking to add as a Defendant the (unnamed) public defender who represented him. ECF No. 21. Bob, Young, Guillory, and Cooley, inmates in the United States Penitentiary in Beaumont, Texas, filed "Motions to Join," seeking to be added as Plaintiffs who were represented by Talbot. ECF Nos. 36, 37, 38, 39.

Brown is currently incarcerated at the U.S.P.-Beaumont. ECF No. 40.

## II. Law and Analysis

Federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution and legislation. *See Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). There is a presumption against subject matter jurisdiction, which must be rebutted by the party bringing an action to federal court. *See Coury*, 85 F.3d at 248. Critically, the party seeking to invoke the jurisdiction of

7

the federal court has the burden of proving that jurisdiction exists. *See Aetna Casualty & Surety Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986).

Despite the various assertions mentioned in the Notice of Removal, Defendants only argue, in substance, 28 U.S.C. § 1441(c) (joinder of federal and state claims) and 28 U.S.C. § 1442 (federal officer removal statute)."[5]  ECF No. 15.  The latter is a closer call than the former.

A.   <u>There is no federal interest joined with Brown's state law claim sufficient for federal jurisdiction under § 1441.</u>

Defendants contend removal to this Court was proper under § 1441 because the case involves a "significant federal interest": it arises out of Brown's federal post-conviction proceedings; Brown contests the application of guidelines and drug quantities pursuant to the United States Sentencing Commission's Guidelines; and Brown's claim implicates his Sixth Amendment right to counsel.

Brown argues that, despite his claims concerning his sentences, he is not alleging that his sentences are invalid, but that Talbot and Black committed legal malpractice due to the manner in which they dealt with him and handled certain aspects of his case.

1.   <u>Defendants have not demonstrated a significant federal interest in this case to support subject matter jurisdiction under § 1331 or § 1441.</u>

---

[5] Although Defendants also argue the case presents a "significant federal interest," they do not assert the jurisdictional statute under which that arises, nor do they cite any supporting jurisprudence for that argument.

Defendants assert jurisdiction pursuant to 28 U.S.C. § 1331. This case does not arise directly under a federal statute. This is a state law claim for legal malpractice. Defendants contend, however, that there is a significant federal interest involved in Brown's federal conviction, from which his malpractice action arises.

Defendants are entitled to remove an action if the Plaintiff could have brought it in federal district court: originally, 28 U.S.C. § 1441(a); as a civil action "arising under the Constitution, laws, or treaties of the United States," § 1331; or as a state law claim that implicates significant federal issues, 28 U.S.C. § 1441(c). *See Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312 (2005) (*citing Hopkins v. Walker,* 244 U.S. 486, 490–491 (1917)); 28 U.S.C. § 1441(c). The significant federal issue doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Products, Inc.*, 545 U.S. at 312; *see also Franchise Tax Board of State of California v. Construction Laborers vacation Trust for Southern California,* 463 U.S. 1, 9 (1983) (a cases arises under federal law where the vindication of a right under state law necessarily turns on some construction of federal law).

Under § 1441(c), federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable

9

of resolution in federal court without disrupting the federal-state balance approved by Congress. *See Gunn v. Minton*, 568 U.S. 251, 258 (2013) (*citing Grable & Sons Metal Products, Inc.*, 545 U.S. at 312). Where *all four* of these requirements are met, jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," which can be vindicated without disrupting Congress's intended division of labor between state and federal courts. *See Gunn*, 568 U.S. at 258 (*citing Grable & Sons Metal Products, Inc.,* 545 U.S. at 313–314.

Therefore, the Court must determine whether Brown's state law malpractice claim "necessarily raises" a federal issue, "actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

### 2.   Federal sentencing issues are not "necessarily raised" and "actually disputed" in this case.

Brown challenges Defendants' actions when representing him in his sentence recalculation. Those sentence recalculations applied only to his drug offense convictions.

A legal malpractice claim is governed by state tort law. "A legal malpractice claim in Louisiana is a negligence claim, albeit a professional negligence claim, and thus derives from La. C.C. arts. 2315 and 2316." *Ewing v. Westport Insurance Corp.*,

2020-00339 (La. 11/19/20), 315 So.3d 175, 182 (*citing* Frank L. Maraist, 21 La. Civ. L. Treatise, *Louisiana Lawyering* § 18.1 (2020)).[6]

Brown contends Defendants committed malpractice in their representation of him by: (1) filing documents under seal against his instructions; (2) conceding the drug quantity for which he was convicted against his instructions and the jury's finding; (3) not raising a Commerce Clause issue; (4) not talking to Brown before filing the documents; and (5) failing to provide Brown with the documents provided by the Government and discuss them with him.

Defendants have not alleged or shown how these claims, if true, could render Brown's sentence (or convictions) invalid.

Brown's argument concerning his drug quantity under the United States Sentencing Guidelines raises an issue under *Blakely v. Washington*, 542 U.S. 296 (2004). However, as discussed in the ruling on Brown's § 2255 Motion (*Brown,* 1:01-CR-10012-01, ECF Nos. 388, 407), *Blakely* is not retroactively applicable on collateral review. *See In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013) (*citing Foster v. Quarterman,* 466 F.3d 359, 369-70 (5th Cir. 2006), cert. den., 550 U.S. 906 (2007)). Therefore, *Blakely* cannot be applied to Brown's sentence calculations.

---

[6] In order to establish a valid legal malpractice claim, a claimant must show evidence sufficient to convince a reasonable trier of fact of (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence. *See MB Industries, L.L.C. v. CNA Insurance Co.*, 2011-0303 (La. 10/25/11), 74 So. 3d 1173, 1184 (*citing Teague v. St. Paul Fire and Marine Ins. Co.,* 07–1384 (La.2/1/08), 974 So. 2d 1266, 1272); *see also Costello v. Hardy,* 03-1146 (La. 1/21/04), 864 So. 2d 129, 138.

Moreover, such an argument concerning drug quantity cannot be considered on recalculation of a sentence under The First Step Act, which is the only proceeding at which Defendants represented Brown.  As set forth above, the First Step Act grants a district judge limited authority to consider reducing a sentence previously imposed by adjusting the calculations that had earlier been made under the Sentencing Guidelines "as if" the lower drug offense sentences were in effect at the time of the commission of the offense.  That is the only basis for a change in the sentencing under the First Step Act.  *See Hegwood*, 934 F.3d at 418.  Because no other changes could be made to Brown's sentence, his argument concerning his drug quantity could not be considered during his First Step Act recalculation.  Therefore, Brown's *Blakely* argument could not change, and does not actually imply, the invalidity of Brown's sentence (or conviction).

Brown also raises a vague claim regarding counsel's failure to argue the "Louisiana Session Law, La. R.S. 1950, Title 52, Ch. 1, § 1."  Although it is not clear what Brown is arguing, it is apparent that Brown could not raise this claim during his sentence recalculation under the First Step Act.  Therefore, that argument would not change, and does not imply the invalidity of, his sentence or conviction.

Brown's contentions about documents filed under seal without discussing them with him or showing them to him do not implicate his sentence or convictions.  Those are simply claims concerning Defendants' professional conduct.

Finally, Brown claims that Defendants failed to raise a Commerce Clause issue. However, as explained above, a Commerce Clause argument cannot be considered on recalculation of a sentence under The First Step Act. Because Brown's Commerce Clause argument could not be considered, that claim would not change and does not actually imply the invalidity of his sentence or convictions.

Therefore, the validity of Brown's sentence (or convictions) cannot be affected by the claims he makes in his malpractice action. *Compare Gunn v. Minson*, 568 U.S. 251, 261 (2013) (the United States Supreme Court held that a state legal malpractice claim brought against a patent attorney did not arise under federal patent law; even if Plaintiff's attorneys had raised a timely argument, the result in the patent infringement proceeding would not have been different).

Defendants also raise a defense pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994) in their Answer.[7] The doctrine established in *Heck v. Humphrey* "avoids allowing collateral attacks on criminal judgments through civil litigation." *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (U.S. 2019). The Supreme Court has

---

[7] Defendants did not cite *Heck v. Humphrey* in their Notice of Removal, their Answer, or their Response to the Motion to Remand. However, they incorporated language from that case to assert the *Heck* defense.

In *Heck,* the Supreme Court held that a plaintiff who has been convicted of a crime cannot bring a § 1983 claim challenging the constitutionality of his conviction unless that conviction has been reversed, expunged, declared invalid, or called into question by federal habeas corpus. *See Arnold v. Town of Slaughter*, 100 Fed. Appx. 321, 323 (5th Cir. 2004). *Heck* bars claims for "unconstitutional conviction or imprisonment" as well as claims "for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid."

explained that "a state prisoner's § 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit . . . if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). The *Heck* doctrine extends to *Bivens* claims brought by persons subject to federal criminal judgments. *See Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996).

To whatever extent Defendants may be attempting to raise a defense pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), *Heck* is not applicable in this case because, as discussed above, Brown's legal malpractice arguments do not implicate the validity of his sentence or convictions.[8]

Thus, overall, federal sentencing (and conviction) issues are not necessarily raised and actually disputed in Brown's legal malpractice claims. Defendants therefore do not show there is a significant federal interest in Brown's state law legal malpractice action.

3. <u>The jurisprudence concludes there is no substantial federal interest in a state law legal malpractice action to support subject matter jurisdiction under § 1441.</u>

The next inquiry is whether Defendants have asserted a substantial federal interest that is capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

---

[8] The Defendants only represented Brown in a procedure pursuant to the Fair Sentencing Act. Brown's convictions were never at issue. In any event, Brown's legal malpractice claims also do not imply the invalidity of Brown's convictions.

In *Gunn*, the Supreme Court concluded that, although federal patent issues were necessary to Defendant's case and were actually disputed, there was no substantial federal interest in the state law malpractice claim arising from a patent case that conferred federal jurisdiction. *See Gunn,* 568 U.S. at 263-64. "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a *whole.*" *Gunn,* 568 U.S. at 260; *see also Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429, 438 (5th Cir. 2019), *cert. den.*, 140 S. Ct. 110 (U.S. 2019). The Supreme Court found that, no matter how the legal malpractice issue in *Gunn* was resolved, it was not likely to "change the real-world result of the prior federal patent litigation." *Gunn,* 568 U.S. at 261; *see also Xitronix Corp.*, 916 F.3d at 438. Thus, resolution of the patent issue in the context of a state legal malpractice action was not important to the federal system as a whole. *See Gunn,* 568 U.S. at 263-64; *see also Xitronix Corp.*, 916 F.3d at 438.

The Supreme Court further explained that the requirement of an appropriate balance of federal and state judicial responsibilities had also not been met, stating that States have a special responsibility for maintaining standards among members of the licensed professions, and their interest in regulating lawyers is especially great. *See Gunn,* 568 U.S. at 264; *see also Xitronix Corp.*, 916 F.3d at 438.

Likewise, in *Singh v. Duane Morris, L.L.P.,* 538 F.3d 334, 338-40 (5th Cir. 2008), the Fifth Circuit Court of Appeals found: there was no substantial federal interest in a state malpractice action arising from a federal trademark suit; that the

15

assertion of federal jurisdiction would have upset the balance of federal and state judicial responsibilities; that legal malpractice has traditionally been the domain of state law; and allowing federal jurisdiction in such a case would bring a flood of legal malpractice suits into federal court.  *See also Thomas v. VOA of North Louisiana*, 2017 WL 57562453, at *1 (W.D. La. 2017), report and recommendation adopted, 2017 WL 5761603 (W.D. La. 2017) (no federal jurisdiction over a legal malpractice claim arising from a claim for social security benefits).

For these and similar reasons, several state law legal malpractice cases against federal criminal defense attorneys, either brought in or removed to federal court, have been dismissed for lack of subject matter jurisdiction.  In *Howard v. Jones*, 2019 WL 6694594, at *2 (W.D. La. 2019), report and recommendation adopted, 2019 WL 6693608 (W.D. La. 2019), a legal malpractice action arising from an unsuccessful civil rights case, the court found "[t]here is no substantial federal issue that must be resolved to address the state-law legal malpractice claims," and that the issues focused on the attorney's obligation to communicate with his client regarding decisions made in the course of the litigation.  *See also Dantes v. Greer,* 2019 WL 6690786, at *3 (W.D. La. 2019), report and recommendation adopted, 2019 WL 6693604 (W.D. La. 2019) (no federal jurisdiction over a legal malpractice claim arising from a federal employment discrimination suit); *Barron v. Wallace*, 2018 WL 3364676, at *3 (W.D. OK 2018) (federal court lacked subject matter jurisdiction over

an inmate's state law legal malpractice claim for damages against his federal criminal defense attorney).

Generally, there is no substantial federal interest in a state law legal malpractice or negligence action against an attorney who represented a client in a criminal proceeding in federal court. Therefore, there is no federal jurisdiction over Brown's state law legal malpractice claim against Defendants under § 1331 or § 1441.

**B.      Because Defendants do not raise a plausible federal defense, they do not meet the jurisdictional criteria of the Federal Officer Removal Statute.**

The Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1),[9] states in pertinent part:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States ... :
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office ....

Congress, through 28 U.S.C. § 1442, authorized the removal of civil or criminal proceedings commenced in a state court against a federal officer or any person acting

---

[9] The Fifth Circuit discussed the history of § 1442 in *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290–91 (5th Cir. 2020):

> Some version of this statute has been in effect since 1815. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 147–49 (2007). At first, Congress authorized only some federal officials sued in connection with their official duties to seek a federal forum rather than face possibly prejudicial resolution of disputes in state courts. *See Willingham v. Morgan*, 395 U.S. 402, 405 (1969). Over time, though, Congress has broadened the removal statute repeatedly until it reached the coverage quoted above. *See Watson*, 551 U.S. at 147–49, 127 S. Ct. at 2305; 28 U.S.C.A. § 1442 (West).

17

under a federal officer for acts performed under color of office. *See Murray v. Murray,* 621 F.2d 103, 105-06 (5th Cir. 1980). The removal statute is an incident of federal supremacy. *See Murray,* 621 F.2d at 106 (*citing Willingham v. Morgan,* , 405 (1969)). It recognizes that the federal government

> can act only through its officers and agents, and they must act within the States. If, when thus acting, and in the scope of their authority, those officers can be arrested and brought to trial in a State Court for an alleged offense against the law of the State, yet warranted by federal authority they possess, and if General Government is powerless to interfere at once for their protection, if their protection must be left to the action of the State Court, the operations of the General Government may at any time be arrested at the will of one of its members.

*Tennessee v. Davis,* 100 U.S. 257, 263 (1880); *see also Murray,* 621 F.2d at 106.

Thus, through the removal statute, Congress sought to protect the exercise of legitimate federal authority by providing federal officials with a federal forum in which to raise defenses arising from their official duties. *See Willingham,* 395 U.S. at 406; *see also Murray,* 621 F.2d at 106. Federal officers may remove cases to federal court that ordinary federal question removal would not reach. *See Latiolais v. Huntington Ingalls, Inc.,* 951 F.3d 286, 290 (5th Cir. 2020) (*en banc*). In particular, section 1442(a) permits an officer to remove a case even if no federal question is raised in the well-pleaded complaint, so long as the officer asserts a federal defense in the response. *See Latiolais,* 951 F.3d at 290. "The raising of a federal question in the officer's removal petition . . . constitutes the federal law under which the action

against the federal officer arises for Art. III purposes." *See Latiolais*, 951 F.3d 286 at 290 (quoting *Mesa v. California*, 489 U.S. 121, 136 (1989)).

Thus, a defendant removing under § 1442(a)(1) must show: (1) it is a "person" within the meaning of the statute; (2) it acted "pursuant to a federal officer's directions"; (3) it asserts a "colorable federal defense"; and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions. *See Latiolais*, 951 F.3d at 296. The Supreme Court has consistently urged courts to avoid "a narrow, grudging interpretation of § 1442(a)(1)." *See Latiolais*, 951 F.3d at 290–91 (quoting *Willingham*, 395 U.S. at 407); *see also Jefferson County v. Acker*, 527 U.S. 423, 431 (1999); *Arizona v. Manypenny,* 451 U.S. 232, 242 (1981).

     1.    <u>Defendants are persons who worked at the direction of the Federal Public Defender in representing Brown in his post-conviction proceedings.</u>

Defendants contend they are "federal employees." A "person" under § 1442(a)(1) is "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity. . . " or, under § 1442(a)(3), "[a]ny officer of the courts of the United States. . . ."

It is noted that 28 U.S.C. § 2671 of the Federal Tort Claims Act specifically states that employees of a Federal Public Defender organization are not considered

employees of the federal government when they act within the scope of providing representation pursuant to 18 U.S.C. § 3006A.[10]

However, the United States Third Circuit Court of Appeals has held that the Federal Community Defender Association (also created by the Criminal Justice Act and provided for in § 3006A) works at the behest of the Administrative Office of the United States Courts, for purposes establishing federal officer jurisdiction under § 1442. *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Association of Philadelphia*, 790 F.3d 457, 469–70 (3d Cir.2015), cert. den., 577 U.S. 1119 (2016).[11]   The Third Circuit explained that the Federal Community

---

[10] Pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(g), the United States District Courts for the Western District of Louisiana established a Federal Public Defender to furnish representation to indigent criminal defendants by appointment.   The Federal Public Defender is authorized to employ staff attorneys.    Defendants Talbot and Black were staff attorneys, of Assistant Federal Public Defenders, employed by the Federal Public Defender and appointed to represent Brown in his post-conviction Fair Sentence Act proceeding.

Title 28 U.S.C. § 2671 (of the Federal Tort Claims Act) was amended by the Federal Courts Improvement Act of 2000, PL 106–518, November 13, 2000, 114 Stat 2410, § 401, to exclude employees of federal public defender organizations who have been appointed under 18 U.S.C. § 3006A to provide perform legal representation:

> "Employee of the government" includes . . . (2) any officer or employee of a Federal public defender organization, except when such officer or employee performs professional services in the course of providing representation under section 3006A of title 18.

Those employees are, instead, covered by malpractice insurance provided by the Administrative Office of the United States Courts, as required by the Criminal Justice Act. *See* 18 U.S.C. § 3006A(g)(3) (Criminal Justice Act Revision, PL 99-651, § 102(a)(5)(C), HR 3004, Nov. 14, 1986).

[11] In *Williams v. Taylor Weidenbach, Inc.*, 849 Fed. Appx. 440, 442 at n. 2 (5th Cir. 2021), the Fifth Circuit noted that, since the opinion in *Latiolais*, the Fifth Circuit's test for federal-officer removal coincides with that of the Third Circuit, as set forth in *In re Commonwealth*, 790 F.3d at 470-71.

Defender "assists" and helps the AO to "*carry out* [ ] the duties or tasks of a federal superior," "which is to implement the CJA and § 3599 through the provision of counsel to federal defendants and indigent federal habeas corpus petitioners." *See In re Commonwealth*, 790 F.3d at 469 (*citing Watson v. Philip Morris Companies, Inc.,* 551 U.S. 142, 152 (U.S. 2007)).

In *Bell v. Thornburg*, 743 F.3d 84, 88 (5th Cir. 2014), the Fifth Circuit held that a Standing Trustee of the bankruptcy court is an officer of the United States and is a federal officer within the purview of § 1442(a)(1) because he is: appointed pursuant to federal law by the United States Trustee for the purpose of assisting the United States Trustee with especially heavy Chapter 13 bankruptcy caseloads; is supervised by the United States Trustee; receives delegated authority; and both assists and carries out the duties and tasks of the United States Trustee.

A Federal Public Defender and her employees act at the behest of the Administrative Office of the United States Courts in providing legal assistance to indigent criminal defendants.[12]  Therefore, it appears that, pursuant to cases from the Third and Fifth Circuits, an assistant federal public defender is, or works at the direction of, a "federal officer."

2.     <u>**Defendants contend the charged conduct is connected to their representation of Brown.**</u>

---

[12] This is not to say that the Administrative Office guides, directs, or influences a Federal Public Defender in any way.  *See Polk County*, 454 U.S. at 321-22; *Ferri v. Ackerman*, 444 U.S. 193, 409 (1979).  It only appoints the attorney to represent an indigent defendant or witness in federal court.

To qualify for removal, an officer of the federal courts must also establish that the suit is "for a[n] act under color of office," 28 U.S.C. § 1442(a)(3).  The officer must show the charged conduct is "connected or associated with" an act under color of federal office.  *See Latiolais,* 951 F.3d at 296.

Defendants contend in their Notice of Removal (ECF No. 1 at 5) and Response (ECF No. 15 at 5) that Brown's Complaint contests the exercise of their duties "authorized by federal statute and pursuant to this Court's Standing Orders."  They also argue that there is a "substantial federal interest" in Brown's conviction and post-conviction relief proceedings and that "[t]he Movants actions were also in furtherance of the federal interest in insuring effective representation of a criminal defendant."

Thus, Defendants have adequately alleged a connection between Brown's allegations of malpractice and their representation of Brown.

### 3.    Defendants fail to assert a "colorable federal defense" to support subject matter jurisdiction under § 1442.

Next, Defendants must assert a "colorable federal defense."  The Supreme Court has made clear that "all the various incarnations of the federal officer removal statute ... *require* the averment of a federal defense."  *Bell*, 743 F.3d at 89 (*citing Mesa,* 489 U.S. at 133–34).  "[I]t is the raising of [the colorable federal defense] in the officer's *removal petition* that constitutes the federal law under which the action

22

against the federal officer arises for Art. III purposes." *Mesa,* 489 U.S. at 136; *see also Latiolais*, 951 F.3d at 290.

An asserted federal defense is colorable unless it is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *See Latiolais*, 951 F.3d at 297 (citing *Bell*, 743 F.3d at 89–91). If a defense is plausible, it is colorable. *See Latiolais*, 951 F.3d at 297.

Defendants do not allege a federal defense in either their Notice of Removal or their Response to the Motion to Remand. ECF Nos. 1, 15. However, as stated above, Defendants broadly asserted defenses in their Answer. ECF No. 18. None of those defenses are alleged in their Notice of Removal. ECF No. 1. Defendants have not argued the merits of any defense in their Response to the Motion to Remand. ECF No. 15.

Defendants claim there is federal jurisdiction because Brown's claims arise out of his federal criminal proceedings. However, that claim does not allege a "federal defense."

To whatever extent Defendants may be asserting *Heck* as a "colorable federal defense," it is reiterated that, for the reasons stated above, *Heck* is not applicable here because Brown's legal malpractice claims do not imply the invalidity of his convictions or sentences. Therefore, *Heck* is not a plausible defense.

The Court is persuaded these Defendants were federal employees, and that the connection to Brown's allegations is adequate. The Court has endeavored <u>not</u> to

23

construe § 1442 narrowly. But to find a plausible federal defense alleged, the Court would have to engage in more than an inferential exercise at this point – it would be a creative one. And this it cannot do.

Because Defendants have not alleged a plausible federal defense, they have failed to carry their burden of proving this Court has subject matter jurisdiction under the federal officer removal statute, § 1442.

C. **Because the Court does not have original subject matter jurisdiction, there is no supplemental jurisdiction over Brown's state law legal malpractice and negligence claims under § 1367.**

Defendants also argue this Court has "supplemental jurisdiction" over Brown's action.

Because Brown's complaint does not present a sufficient basis for original federal jurisdiction, the Court cannot exercise supplemental jurisdiction over Brown's state negligence or legal malpractice claims. *See* 28 U.S.C. § 1367(a) ("in any civil action of which the district courts have *original* jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). *See Martin v. State Bar of Texas*, 2013 WL 3283729, at *2 (N.D. Tex. 2013) ("[S]ince the complaint does not present a sufficient basis for federal question or diversity jurisdiction, the Court cannot exercise supplemental jurisdiction over Plaintiff's state negligence or legal malpractice claims.").

**D.** <u>There is no subject matter jurisdiction under § 1346 because the United States is not a Defendant.</u>

Finally, Defendants allege, without any argument, that the Court has jurisdiction pursuant to 28 U.S.C. § 1346 because the United State is a Defendant. However, neither the United States nor one of its departments or agencies is named as a Defendant, nor have Defendants moved to substitute or add the United States as a Defendant. Defendants have not cited any authority for the proposition that naming a Federal Public Defender as a defendant in a legal malpractice action is actually a suit against the United States. It is self-evident that a federal public defender does not act on behalf of the Government in representing a criminal defendant.[13] The office of the United States Attorney represents the Government.

Because the United States is not and cannot be a Defendant in this legal malpractice action, the Court does not have subject matter jurisdiction pursuant to § 1346.

---

[13] To have the United States liable for legal malpractice committed by a federal public defender in defending a person against a prosecution brought by the United States would imply an egregious conflict of interest.

It is noted that the Federal Tort Claim Act, 28 U.S.C. 2561, excludes from the definition of "employee of the government" any officers and employees of a Federal public defender organization who are performing professional services in the course of providing representation under 18 U.S.C. § 3006A.

Moreover, federal public defenders are not federal officers for purposes of a *Bivens*-type claim because they do not act on behalf of the government, but rather serve the public by advancing the undivided interests of their clients. *See Davis v. Van Hook,* 2014 WL 1248291, at *2 (W.D. La. 2014) (collecting cases).

## III.   Conclusion

Based on the foregoing, IT IS RECOMMENDED that Brown's Motion to Remand (ECF No. 6) be GRANTED and this case be REMANDED to the Louisiana Tenth Judicial District Court

IT IS FURTHER RECOMMENDED that Brown's Motions to Compel and for Sanctions (ECF No. 20, 42, 56) be DENIED FOR LACK OF SUBJECT MATTER JURISDICTION.

IT IS FURTHER RECOMMENDED that the Motions to Join (ECF Nos. 21, 36, 37, 38, 39) be DENIED FOR LACK OF SUBJECT MATTER JURISDICTION.

IT IS FURTHER RECOMMENDED that Brown's Motion for Partial Summary Judgment (ECF No. 48) be DENIED FOR LACK OF SUBJECT MATTER JURISDICTION.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged.  Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _____ 21st _____ day of March 2023.

Joseph H.L. Perez-Montes
United States Magistrate Judge

27