# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| **TIMOTHY DEMITRI BROWN #10979-035** | **CASE NO. 1:21-cv-919** |
| **-vs-** | **JUDGE DRELL** |
| **DUSTIN TALBOT ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

## MEMORANDUM RULING AND ORDER

Before the Court are Plaintiff Timothy Brown's motion to remand styled as an objection to the notice of removal filed by Defendants Dustin Talbot and Peter Black, (Doc. 6); his motion to compel and for sanctions, (Docs. 20, 42, 56); and his motion for partial summary judgment, (Doc. 48).

Nonparties Damon Causey, Tre'vin Bob, Stephen Young, Russell Guillory, and Kevin Cooley have also filed motions to join in Brown's cause of action against Defendants, (Docs. 21, 36-39). Magistrate Judge Perez-Montes issued a Report and Recommendation on the above motions for this Court's review. (Doc. 58). Defendants filed timely objections to the Magistrate Judge's Report and Recommendation. (Doc. 60).

Having carefully considered all related filings and for the reasons that follow, the Court **ADOPTS IN PART** the Magistrate Judge's Report and Recommendation ("R&R") as follows and as explained further:

(1) The recommendation to remand the case to the Ninth Judicial District Court of Louisiana, Rapides Parish, is not adopted, and the motion to remand, (Doc. 6), will be **DENIED**;

1

(2) The recommendation that the nonparties' motions to join the instant action be denied, (Docs. 21, 36-39), is **ADOPTED** as further explained, and the motions to join the litigation will be **DENIED**;

(3) The recommendation that Plaintiff's motions to compel and for sanctions be denied, (Docs. 20, 42, 56), is **ADOPTED** as further explained, and the motions to compel and for sanctions will be **DENIED**; and

(4) The recommendation that Plaintiff's motion for partial summary judgment be denied, (Doc. 48), is **ADOPTED** as further explained, and the motion for partial summary judgment will be **DENIED**.

## I.     RELEVANT BACKGROUND

Plaintiff Timothy Brown is currently an inmate at the Federal Correctional Institution in Beaumont, Texas.[1] In 2002, he and three codefendants were convicted by a jury on multiple drug and money laundering offenses in this Court. United States v. Brown, 1:01-CR-10012-01 (W.D. La.), (Doc. 217). That same year, he was sentenced to life imprisonment. Id. at (Doc. 273). Brown appealed his convictions and sentences, but the United States Court of Appeals for the Fifth Circuit affirmed this Court's judgment of conviction and the accompanying sentence. Id. at (Docs. 367, 370-72).

From 2005 to 2008, Brown filed numerous motions seeking postconviction relief, which this Court denied after consideration of Plaintiff's and the Government's briefings. See, e.g., Brown, 1:01-CR-10012-01 (W.D. La.), (Docs. 388, 407) (denying and dismissing with prejudice

---

[1] At the time Brown filed this suit, he was incarcerated at the Federal Correctional Institution in Pollock, Louisiana. (Doc. 1-2).

Brown's "Motion to Recall, Vacate or Correct Judgment" under 28 U.S.C. § 2255); see also id. at (Doc. 475) (denying Brown's motion for sentence reduction under 18 U.S.C. § 3582(c)(2)).

In 2018, the Federal Public Defender's Office for the Middle and Western Districts of Louisiana was appointed to represent Brown in a 2015 motion for sentence reduction under Amendment 782 and 18 U.S.C. § 3582(c)(2) ("Section 3582")—his second Section 3582 motion. Brown, 1:01-CR-10012-01 (W.D. La.), (Docs. 582, 630). In connection with this proceeding, the Federal Public Defender ("FPD") enlisted the assistance of one of its Research and Writing Specialists, Defendant Peter Black.[2] (Doc. 630) Black assisted the FPD pursuant to this Court's Standard Procedural Order[3] regarding Amendment 782/Section 3582 motions. Id. at (Doc. 583). As of this writing, Brown's second Section 3582 motion, Brown, 1:01-CR-10012-01 (W.D. La.), Doc. 582), remains pending before this Court after we granted motions to enroll private counsel to represent Brown.[4] Id. at (Docs. 734-739). The substance of that second Section 3582 motion is *not* the impetus for these current motions or this Memorandum Ruling and Order.

---

[2] Even though Defendant Black worked as a Research and Writing Specialist with the district's FPD's Office to help with Brown's second Section 3582 Motion, he never enrolled as counsel of record for Brown. Assistant Federal Public Defender Betty Marak appeared on record and enrolled as Brown's counsel for Amendment 782/Section 3582 motion for sentence reduction purposes. Brown, 1:01-CR-10012-01 (W.D. La.), (Doc. 630). Marak and then-Federal Public Defender Rebecca Hudsmith filed a "Motion to Withdraw as Counsel of Record" from Brown's case on November 4, 2020, citing an "irreconcilable strategic impasse regarding the course of the litigation." Id. at (Doc. 705). This Court granted the withdrawal motion the next day. Id. at (Doc. 706).

[3] This order, Brown, 1:01-CR-10012-01 (W.D. La.), (Doc. 583), and its revised version, id. at (Doc. 583-1), deal with Amendment 782 to the Guidelines, which lowered drug-related base offense level and Amendment 788, which made Amendment 782 retroactive.

[4] This Court initially denied Brown's second Section 3582 motion as moot since he previously raised the retroactive application of Amendment 782 in an earlier Section 3582 motion, which was also denied. Brown, 1:01-CR-10012-01 (W.D. La.), (Docs. 574 (first Section 3582 motion), 693 (denial of first Section 3582 motion), 712 (denial of second Section 3582 motion)). However, the order was vacated on March 8, 2021. Id. at (Doc. 713). The Government opposed Brown's second Section 3582 motion, and, as mentioned above, the motion's disposition is still pending before this Court.

3

In 2019, the FPD was appointed to represent Brown on a separate motion to recalculate Brown's sentence under Section 404 of the First Step Act of 2018 ("FSA"). Brown, 1:01-CR-10012-01 (W.D. La.), (Doc. 638). Defendant Dustin Talbot, an Assistant Federal Public Defender, moved for an amended judgment reducing Brown's sentence under the FSA. Id. On January 31, 2020, this Court determined that Brown's original sentence imposed on May 10, 2002 did not warrant amendment or reduction under the FSA and denied the motion. Id. at (Doc. 643).

On February 10, 2020, Brown filed a pro se motion to appeal this Court's ruling on his motion for sentence recalculation under the FSA. Brown, 1:01-CR-10012-01 (W.D. La.), (Doc. 644). And on February 11, Talbot moved to withdraw as counsel of record for Brown. Id. at (Doc. 647). We granted Talbot's motion to withdraw. Id. at (Doc. 648). On December 4, 2020, the Fifth Circuit affirmed this Court's decision on Brown's motion for sentence recalculation, declining to adopt any of his arguments. Id. at (Doc. 711).

On December 16, 2020, Brown filed the subject complaint against Defendants Talbot and Black in the Ninth Judicial District Court of Louisiana in Rapides Parish, alleging, among other things, "[l]egal [m]alpractice" by these attorneys.[5]  Brown argues that Defendants did not assert the defenses requested by him; they failed to follow his instructions which prohibited them from filing any documents with the Court under seal; and Defendants' actions prompted threats made against Brown's life, which ultimately resulted in physical harm. (Doc. 1-2). Defendants removed the case to federal court under 28 U.S.C. §§ 1331, 1346, 1367, and 1442 "because the claims

---

[5] In addition to legal malpractice, Brown alleges that Talbot and Black are responsible for a range of other misconduct under Louisiana law, including "fraud, attempted murder, intentional infliction of emotional distress, tyranny, etc." (Doc. 1-2). We address these claims in Section III below.

asserted under a federal law, are against federal officers/employees, and the court may exercise supplemental jurisdiction over any alleged state law claims." (Doc.1).

## II.    LAW & ANALYSIS

Our departure from the Magistrate Judge's Report and Recommendation is material in only two respects: (1) whether this Court has jurisdiction over the removed case filed by Defendants and, if so, (2) whether (a) nonparties' motions to join, (Docs. 21, 36-39); (b) Plaintiff's motions to compel and for sanctions, (Docs. 20, 42, 56); and (c) Plaintiff's motion for partial summary judgment, (Doc. 48), should be granted. We now address each of these issues in turn.

### A.  <u>Jurisdiction</u>

1. *This Court has original jurisdiction over this case under the federal officer removal statute, 28 U.S.C. § 1442.*

Federal courts are courts of limited jurisdiction. To hear a case, courts must have both personal jurisdiction over the defendant, or the legal authority to hale that party into court, and subject matter jurisdiction over the claim(s). Subject matter jurisdiction refers to the court's power to hear certain cases and represents "the extent to which a court can rule on the conduct of persons or the status of things." <u>Carlsbad Tech., Inc. v. HIF Bio., Inc.</u>, 556 U.S. 635, 639 (2009) (internal citations and quotation marks omitted). Subject matter jurisdiction must be rooted in both a constitutional and statutory grant. Here, Defendants argue in their notice of removal, (Doc. 1), that jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question jurisdiction), 1346 (jurisdiction where the United States is a named defendant), 1442 (federal officer removal jurisdiction), and 1367 (supplemental jurisdiction).[6]

---

[6] Defendants also contend that jurisdiction is proper under 28 U.S.C. § 1446. However, we construe this statute as determinative of the appropriate venue to bring the removal action, not as a basis for the Court to exercise its jurisdiction. To that end, we decline to engage in a lengthy discussion about the inapplicability of the statute from a jurisdictional context.

Defendants contend that this Court has original jurisdiction because:

> [Brown] has alleged violations of the United States Constitution, Sixth Amendment right to counsel and effectiveness of his federally appointed counsel under <u>Strickland v. Washington</u>, 466 U.S. 668, 696 (1984)[,] . . . depriv[ation] of [Plaintiff's] due process right (life) under the Fifth Amendment to the U.S. [*sic*] Constitution[, and based on Plaintiff's] invo[cation of the] application of the Commerce Clause, Article 1 § 8, clause 3 of the United States Constitution . . . .

(Doc. 1). Plaintiff, in response, denies the characterization of the claims made in his petition and states pointedly, "Plaintiff has never made any such allegations" and has "never invoked the Commerce Clause as authority for this complaint." We agree. Contrary to Defendants' insistence, there is no facial basis for this Court to hold that it has federal question jurisdiction under 28 U.S.C. § 1331. Even with a liberal construction of Brown's complaint, to which it is entitled as a pro se filing, this Court declines to extrapolate beyond the claims Brown actually pleaded. Therefore, we find we do not have specific subject matter jurisdiction based on the federal question jurisdictional statute codified at 28 U.S.C. § 1331.

Next, Defendants identify 28 U.S.C. § 1346 as a basis for this Court to exercise subject matter jurisdiction over Plaintiff's claims. Defendants' rationale for exercising jurisdiction under this statute is unclear. They have provided no basis for substituting the United States as the sole named defendant in this civil action. We only surmise Defendants believe that their status as federal employees or "employees of the Government" warrant substituting the United States as the proper defendant—an action we would only undertake if requested *and* if Brown's claims fell within the scope of the Federal Tort Claims Act ("FTCA").

The FTCA waives some of the federal government's sovereign immunity from citizen suits, and it establishes the exclusive liability of the federal government for common law torts committed by government employees acting within the scope of their employment. 28 U.S.C. §

6

1346(b). In other words, no government employee can be sued individually (with some exceptions), and the responsibility for the tort falls upon the federal government. Plaintiff's claim of legal malpractice is indisputably a tort under Louisiana law,[7] but Plaintiff's suit falls outside the scope of the FTCA. In 1988, Congress passed the Westfall Act, which amended the FTCA to extend the FTCA's protections to any "employee of the government" as defined by the Act. Daniel A. Morris, FED. TORT CLAIMS, § 1.10 "FTCA Legislative History" (2022). The amendment broadened the definition of "employee of the government" to cover any federal agency employee, including those within the legislative and judicial branches. Id.; see also 28 U.S.C. § 2671. That same provision, however, does not extend to FPD officers or employees "when such officer[s] or employee[s] perform[] professional services in the course of providing representation under [18 U.S.C. § 3006A]." 28 U.S.C. § 2671; accord 28 U.S.C. 1346(b)(1).[8] As the FPD's employees,

---

[7] See Zloop, Inc. v. Phelps Dunbar LLP, No. 6:18-CV-31, 2019 WL 1978357, at *5 (W.D. La. Mar. 27, 2019) (citing Teague v. St. Paul Fire and Marine Ins. Co., 07-1384 (La. 2/1/08); 974 So. 2d 1266, 1272 (internal citation omitted)) (explaining that under Louisiana law, plaintiffs must prove the following to establish a legal malpractice claim: (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence).

[8] It is worth noting that some federal appellate courts, like the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit"), view legal malpractice claims brought against a federal public defender and their employees as actionable under the FTCA. In Sullivan v. United States, the Seventh Circuit held that the Westfall Act applied to allegations of malpractice against federal public defenders. 21 F.3d 198 (7th Cir. 1994), cert. denied, 513 U.S. 1060 (1994). This means that the Seventh Circuit interpreted the Westfall Act to mean that federal criminal defendants formerly represented by federal public defenders could only name the United States as a defendant in its malpractice suit. We disagree with this interpretation of the statute. Aside from the holding being impracticable because private attorneys appointed by a district judge to represent indigent federal criminal defendants pursuant to that judge's authority under the Criminal Justice Act do not enjoy immunity from malpractice suits, Ferri v. Ackerman, 444 U.S. 193 (1979), the Sullivan ruling lays in direct opposition to the Supreme Court's holding in Polk County v. Dodson, 454 U.S. 312 (1981). In Polk County, the Supreme Court held that a public defender does not act under color of state law when representing an indigent client. Id. at 324-25. An employee is deemed to be acting under color of law when functioning for or on behalf of the government. Id. at 317-18 (citing United States v. Classic, 313 U.S. 299, 326 (1941)). By extension, federal public defenders do not act under color of federal law when representing their clients, because their representation is not done for or on behalf of the United States Government; their relationship is adversarial to the

Defendants are excepted from the protections of the FTCA because, by their own admission, their representation of Brown occurred at the direction of the FPD's authority under 18 U.S.C § 3006A. (Doc. 1). Therefore, to the extent Defendants are requesting that this Court substitute the United States as the sole defendant in this action, that request is **DENIED**, since jurisdiction asserted under 28 U.S.C. § 1346 would be improper.

Finally, we turn to Defendants' assertion that this Court has original jurisdiction over this case under 28 U.S.C. § 1442 ("Section 1442")—the federal officer removal statute. This provision permits removal by "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ." 28 U.S.C. § 1442(a)(1). This statute allows federal officers to remove cases to federal court "even if no federal question is raised in the well-pleaded complaint, *so long as the*

---

Government. In addition to being adversarial, a federal public defender's relationship with the Government is more akin to that of an independent contractor. See generally Jane M. Ward, *Sullivan v. United States: Are Federal Public Defenders in Need of a Defense*, 40 VILL. L. REV. 233 (1995). A creature of Congress, the existence of federal public defender organizations and community defender organizations springs from a statutory grant in 18 U.S.C. § 3006A(g), and under 18 U.S.C. § 3006A(h), the Judicial Conference of the United States ("Judicial Conference") is authorized to issue rules and regulations governing the operation of district plans created to furnish representational services (including counsel and investigative, expert, and other services necessary for adequate representation) for financially eligible persons. GUIDE TO JUDICIARY POLICY, Vol. 7A, § 110.30(b). Moreover, at the direction of the Judicial Conference, the Administrative Office of the United States Courts ("Administrative Office") oversees the expenditure of funds allocated for federal public defender organizations and community defender organizations. With this framework in mind, we can borrow principles from the vicarious liability doctrine and conclude that the employer (the Administrative Office of the United States Courts—an administrative agency of the judicial branch of government) should only be held liable for the tortious conduct of an independent contractor (the federal public defender and his or her employees) where the employer was negligent in hiring or retaining that independent contractor or where the assigned task was non-delegable. Neither has been asserted or evidenced here. Therefore, Defendants' argument that the United States should be a named defendant fails. For those reasons, and for reasons in the body of this Memorandum Ruling and Order, federal public defenders and their employees are *not* considered "employees of the Government" as contemplated by the FTCA, and the United States would not be an appropriately named defendant in this suit.

*officer asserts a federal defense in the response.*" <u>Latiolais v. Huntington Ingalls, Inc.</u>, 951 F.3d 286, 290 (5th Cir. 2020) (emphasis added). The requisite federal defense "must constitute the federal law under which the action against the federal officer arises for Art[icle] III purposes." <u>Id.</u> (quoting <u>Mesa v. California</u>, 489 U.S. 121, 136 (1989)) (internal quotation marks omitted). Additionally, the Supreme Court has urged courts to avoid "narrow, grudging interpretation[s] of § 1442(a)(1)." <u>Id.</u> (quoting <u>Willingham v. Morgan</u>, 395 U.S. 402, 407 (1969); <u>Arizona v. Manypenny</u>, 451 U.S. 232, 242 (1981); <u>Jefferson Cnty. v. Acker</u>, 527 U.S. 423, 431 (1999)) (internal quotation marks omitted).

Removal under Section 1442(a)(1) is appropriate where a defendant can demonstrate "(1) [he] is a person within the meaning of the statute; (2) [he] acted pursuant to a federal officer's directions; (3) [he] asserts a colorable federal defense; and (4) there is a causal nexus between the defendant's acts under color of federal office and the plaintiff's claims." <u>Latiolais</u>, 951 F.3d at 291 (internal citations and quotation marks omitted). Defendants are both people contemplated by the federal officer removal statute, and their representation of Brown—whether direct or indirect— occurred at the direction of the Federal Public Defender for the Middle and Western Districts of Louisiana—an officer of a federal entity. Thus, the first two prongs of the test are satisfied.

To satisfy the connection or "causal nexus" element, the officer must only show that the charged conduct is "connected or associated with" an act under color of federal office. <u>Id.</u> at 296. Defendants argue that Brown's claims spring from his dissatisfaction with the representation he received during his postconviction relief actions. The federal statute authorizing Defendants' representation of Brown is 18 U.S.C. 3006A(g) which authorizes the creation of a federal public defender organization to represent indigent federal criminal defendants. The Criminal Justice Act Guidelines instruct that while the court appoints the FPD to represent those financially eligible

criminal defendants, "federal public defenders . . . should be responsible for the assignment of cases within their own offices" GUIDE TO JUDICIARY POLICY, Vol. 7A, § 440. This Court indeed appointed the FPD to represent Brown both in his second Section 3582 motion for sentence reduction, Brown, 1:01-CR-10012-01 (W.D. La.), (Doc. 582), and his motion for sentence recalculation under the FSA, id. at (Doc. 638). Among the FPD's attorney assignments were Defendants Talbot and Black. Brown, 1:01-CR-10012-01 (W.D. La.), (Docs. 584, 630, 638). The FPD's assignment of an individual staff attorney or staff attorneys to a particular case necessarily means that such attorneys are acting under the direction of the FPD—a federal officer within the scope of the federal officer removal statute. That appointment to represent Brown having occurred, this Court also issued a "Standard Procedural Order" for each of Brown's postconviction relief motions requiring the protocol that would govern the disposition of those motions, whether filed by the criminal defendant pro se or by counsel appearing on behalf of the criminal defendant. Brown, 1:01-CR-10012-01 (W.D. La.), (Docs. 583, 583-1) (procedural order for the retroactive application of Amendment 782 for Section 3582 motions for sentence reduction); (Doc. 1-7) (procedural order for motions for sentence recalculation under the FSA). Brown's legal malpractice claim emanates from the methods and strategies used by Defendants during their representation of him for the limited purposes of winning postconviction relief. (Doc. 1). These facts, taken together, establish a connection between the charged conduct in Plaintiff's complaint and Defendants' representation of Plaintiff, which was all done at the direction of the FPD AND THIS COURT. Thus, Defendants have satisfied the third prong of the federal officer removal test.

The colorable federal defense element provides the most fertile ground for multiple interpretations by Brown and Defendants (and the Magistrate Judge). (Docs. 1, 6, 15, 58). Defendants contend that their defense to Brown's claim is rooted in compliance with this Court's

required protocols that governed the procedure for Brown's second Section 3582 motion and his motion for sentence recalculation under the FSA. Brown, 1:01-CR-10012-01 (W.D. La.), (Docs. 583, 583-1); (Doc. 1-7); see also (Docs. 15, 60) (where Defendants reiterate their objections to Brown's opposition to the removal in his motion to remand, (Doc. 6), and the Magistrate Judge's R&R which concluded that no colorable federal defense existed). To be "colorable," a defendant's asserted federal defense need not be "clearly sustainable," since Section 1442 does not require a federal officer or a person acting under her "to win his case before he can have it removed." Latiolais, 951 F.3d at 296-97 (quoting Jefferson Cnty., 257 U.S. at 431) (internal citations and quotation marks omitted). The Fifth Circuit and Supreme Court have long established that if an asserted federal defense is plausible, it is also colorable. See id. (collecting cases); see also Bell v. Thornburg, 743 F.3d 84, 89-91 (5th Cir. 2014) (deeming an asserted federal defense colorable simply because it satisfied the "causal connection" requirement of the federal officer removal test).

In this case, Defendants' defense of their conduct stems directly from their execution of the duties charged to this district's FPD—representing indigent federal criminal defendants—and the procedural limitations imposed on that representation by this Court's orders. For example, Brown repeatedly asserts he instructed Defendants not to file documents under seal. However, the procedural order issued by then-Chief Judge S. Maurice Hicks, Jr. specifically directed Defendants to file certain documents under seal both during and upon disposition of the criminal defendant's motion for sentence reduction. (Doc. 1-7). Similarly, this Court issued an order in connection with Amendment 782/Section 3582 motions that upon our grant or denial of a defendant's reduction in sentence under Section 3582: "the Retroactive Report and addendum shall be filed into the record *under seal*." Brown, 1:01-CR-10012-01 (W.D. La.), (Doc. 583) (emphasis added). Considering the evidence submitted, we find that Defendants' assertion of a federal defense is not wholly

insubstantial or frivolous.[9] We do not, however, speculate on what further evidence, if any, may come to light as the case proceeds and conclude only that Defendants have a colorable federal defense. Thus, this Court finds that this action meets the conditions for removal under Section 1442(a)(1), thereby establishing this Court's subject matter jurisdiction over the case.

2.   *This Court retains supplemental jurisdiction over Plaintiff's state law claims.*

Federal courts may also exercise supplemental jurisdiction over state law claims, so long as (1) the Court has original jurisdiction over the civil action, (2) the state law claims "derive from a common nucleus of operative fact," and (3) are "so linked that the plaintiff would ordinarily be expected to try them all in one judicial proceeding." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005) (reaffirming the longstanding principle that district courts may exercise supplemental jurisdiction over nonfederal claims where that court has original jurisdiction over the civil action); DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 351 (2006) (internal citation omitted) (explaining that supplemental jurisdiction should only attach where the nonfederal claims flow from acts and events logically related to the basis providing the original jurisdictional grant). Additionally, consistent with Article III of the United States Constitution, federal district courts may exercise supplemental jurisdiction over state law claims even where only state law claims remain. Osborn v. Haley, 549 U.S. 225, 245 (2007); Arbaugh v. Y & H Corp., 546 U.S. 500, 514

---

[9] When considering the colorability of Defendants' asserted federal defenses, the R&R, (Doc. 58), suggests a standard much higher than the one routinely articulated by the Supreme Court. See, e.g., Jefferson Cnty., 527 U.S. at 431; Mesa, 489 U.S. at 133-36; Willingham, 395 U.S. at 407. Aside from erroneously stating that Defendants asserted no federal defenses, the R&R also required Defendants to "argue[] the merits of any defense in their Response to the Motion to Remand." (Doc. 58). The Supreme Court only requires district courts to assess whether the asserted defense is "colorable," meaning that the defense need only be plausible, not meritorious. Jefferson Cnty., 527 U.S. at 431; Latiolais, 951 F.3d at 296-97 (collecting cases). Therefore, Defendants are not required to flesh out arguments that go to the merit of the defense. Additionally, this Court is of the impression that the focus on this prong of the test is entirely misplaced. If a defendant can assert a plausible federal defense, that should be more than sufficient under the statute.

(2006). We have established that this Court retains subject matter jurisdiction of this action based on the federal officer removal statute. And even though all of Plaintiff's claims are rooted in Louisiana law, these claims form the entire basis for his complaint. They are also inextricably linked to Defendants' federal defense that they acted under the color of the FPD, a federal officer. Therefore, as both a matter of law and practicality, we must attach supplemental jurisdiction to these claims.

**B. <u>Joinder Motions</u>**

Nonparties Damon Causey, Tre'vin Bob, Stephen Young, Russell Guillory, and Kevin Cooley each filed a motion to be joined (*i.e.*, to intervene as plaintiffs) in the instant suit. (Docs. 21, 36-39). All but Causey's joinder motion contain mirror language, and each filing appears to be on a form that persons interested in filing such a motion with this Court against Defendant Talbot for malpractice could complete.[10] (Docs. 36-39). Interestingly, included in Cooley's filing is a letter signed by Plaintiff Brown that reads:

> Dear Federal Prisoner:
>
> Your attorney, Dustin Talbot is being suited [*sic*] for Legal [*sic*] malpractice for failing to inform his clients of the Louisiana Cession [*sic*] Statute. This law would have sent you home instead of to federal prison. You may be entitled to relief and/or compensation.

---

[10] The body of the form motion reads:

> The undersigned moves to join the above action [Brown v. Talbot, No. 01:21-cv-00919], whereas Dustin Talbot represented the undersigned and never mentioned the Louisiana Cession [*sic*] Statute, Louisiana Revised. [*sic*]
>
> Statute 52:1 [*sic*], nor did Mr. Talbot advise the undersigned as to how the statute applies to criminal jurisdiction.

A blank for the movant's signature follows a closing salutation and the word "address" is typewritten below the signature line to prompt the movant to record their address in the space immediately to the right of the word. <u>See, e.g.</u>, (Doc. 36).

You must file the enclosed Motion to Join. Sign it, put your current address and send it to: Clerk of Court, 300 Fannin Street, Shreveport, La. 71101

Graciously,
Timothy Demitri Brown

(Doc. 39-1). Federal Rule of Civil Procedure 20 does allow several plaintiffs to join in one action if: (1) they assert any right to relief jointly, severally, or in the alternative, for or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all plaintiffs will arise in the action. FED. R. CIV. P. 20(a)(1). Generally, if plaintiffs meet the test for permissive joinder under Rule 20, courts will allow joinder. But, permissive joinder is ultimately discretionary, and courts can refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness. See Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 522 (5th Cir. 2010) (explaining the district court may deny joinder for judicial economy purposes or where "different witnesses and documentary proof would be required for plaintiffs' claims) (internal citation omitted). Even with liberal construction of Rule 20, neither the form motions filed by the nonparties nor Causey's joinder motion sufficiently meet the requirements outlined in the Rule. While all of the nonparties alleged having been represented by Defendant Talbot and further allege that Defendant Talbot "did not argue the Louisiana Cession [sic] Statute," none of the parties pleads a colorable claim which this court can adjudicate. The motions, as written and filed with this Court, do not allow us to ascertain that similar questions of fact or law exist between their cases and Plaintiff Brown's case, nor do they permit us to infer that such similarities would unduly prejudice the nonparties from pursuing any claims they may have against Defendant Talbot in the future. The nonparties' claims undoubtedly involve separate facts and circumstances that occurred at different times. For that reason, among the others discussed above, they have no place in this

14

limited fact-based case regarding the representation of Plaintiff Brown on the postconviction motions at issue. Additionally, the nonparties fail to state any claim for relief. Consequently, all of the nonparties' joinder motions, (Docs. 21, 36-39) will be **DENIED**.

### C.  Discovery Motions

Next, we must consider Brown's motions to compel and for sanctions against Defendants, (Docs. 20, 42, 56). As a general proposition, pro se litigants are not exempt from compliance with the Federal Rules of Civil Procedure or the local rules of a district court. Romero v. ABC Ins. Co., 320 F.R.D. 36, 40 (W.D. La. 2017) (citing Birl v. Estelle, 660 F.2d 592, 593) (5th Cir. 1981)) (internal citation omitted); Perkins v. United States, 314 F. Supp. 2d 664, 670 (E.D. Tex. 2004) ("Plaintiffs' *pro se* [*sic*] status does not excuse them from complying with federal statutes, rules of civil procedure, or local rules of the court."). Brown cites no legal arguments as the bases of his motions; he only offers words of general discontent with the responses furnished by Defendants and alleges that Defendants have ignored his requests for further supplementation of responses, (Docs. 42, 56). He also claims that Defendants "responded with a Legal Zoom template." (Doc. 20). In their opposition to Brown's first motion to compel and for sanctions, Defendants argue that Brown failed to comply with Federal Rule of Civil Procedure 37[11] and Local Rule 37[12] of this Court. (Doc. 26). They contend that Brown's motion is missing a certification representing that he conferred with Defendants in good faith without court action. And because Brown did not certify

---

[11] Defendants contend that when Brown filed his first motion to compel, he violated Federal Rule of Civil Procedure 37 because he failed to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action." Fed. R. Civ. P. 37(a)(1).

[12] The relevant portion of Local Rule 37 for Defendants' argument reads: "No motion relative to discovery shall be accepted for filing unless accompanied by a certificate of counsel for the moving party stating that counsel have conferred . . . for purposes of amicably resolving the issues . . . ." LR37.1 (W.D. La.).

that he met with Defendants to discuss his discovery concerns, the motion should be denied for noncompliance with the above-named procedural rules. (Doc. 26). Across all discovery motions at issue, Defendants also argue, among other things, that their answers provided "specific, merited objections" and were "substantive" in nature. (Docs. 26, 46, 61). We agree. Defendants complied with all Federal Rule of Civil Procedure 33 requirements, both in substance and in form, *i.e.*, Defendants answered all interrogatories in a timely manner and "separately and fully in writing under oath." FED. R. CIV. P. 33(b). Defendants also made specific and timely objections to Brown's interrogatories where appropriate. (Docs. 26, 46, 61). Given Defendants' compliance with the applicable discovery rules, sanctions are inappropriate. Therefore, Plaintiff's first, second, and third motions to compel and for sanctions, (Docs. 20, 42, 56), will be **DENIED**.

### D.  Motion for Partial Summary Judgment

Finally, we turn to Brown's motion for partial summary judgment, (Doc. 48). Plaintiff seeks partial summary judgment on "issues conceded to by [D]efendants," including the applicability of Louisiana Revised Statutes 52:1 to Plaintiff's underlying criminal case and Defendants' compliance with an order of this Court. (Doc. 48). "A partial summary judgment order . . . is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Streber v. Hunter, 221 F.3d 701, 737 (5th Cir. 2000) (internal citation and quotation marks omitted). Partial summary judgment, like its more fulsome counterpart, summary judgment, "serves . . . to root out, narrow, and focus the issues" argued at trial. Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir. 1993).

Under Federal Rule of Civil Procedure 56, courts must grant summary judgment where "the movant shows that there is no genuine dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (emphasis added). A material fact

"might affect the outcome of the suit," and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc. 7 F.4th 301, 309 (5th Cir. 2021) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)). If the movant fails to meet this initial burden, then the court must deny summary judgment. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). That mandate persists regardless of the nonmovant's response. Id. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and identify specific facts showing a genuine dispute that must be argued at trial. Sanchez Oil, 7 F.4th at 309 (internal citations omitted). The nonmovant will be required to submit "significant probative evidence" to support their claim. State Farm Life Ins. Co. v. Gutterman, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249.

When ruling on a motion for summary judgment, it is improper for a court to make a credibility determination or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). A court must also view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. Clift v. Clift, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine dispute of material fact exists when the evidence would allow for a reasonable trier of fact to return a verdict for the nonmovant. Renfroe v. Parker, 974 F.3d 594, 599 (5th Cir. 2020) (citing Austin v. Kroger Tex., L.P., 864 F.3d 326, 328 (5th Cir. 2017)).

Brown moves for this Court to enter partial summary judgment on five "facts" which he supposes are "undisputed, well-known [sic] and/or have been proven beyond all doubt." (Doc. 48). He supplies no legal argument or citation for why any of these facts merits a finding in his favor.

Many of the "[undisputed] facts" alleged by Brown resemble nothing more than a recitation of the facts pleaded in his original petition filed in state court, (Doc. 1-2). These bald conclusory statements, without some grounding in case law or evidence adduced in discovery, do not meet the standard articulated by Federal Rule of Civil Procedure 56. We need not broach arguments proffered by Defendants that Brown's argument fails to demonstrate that the facts alleged in the partial summary judgment motion do not prove a legal malpractice claim. (Doc. 53). Accordingly, Brown's motion for partial summary judgment, (Doc. 48), on all issues enumerated in the motion will be **DENIED**.

## III.   OTHER CLAIMS

For completeness, we must address the other four state law claims pleaded by Brown in his original state court petition, including alleged criminal misconduct that may only be pursued by the State of Louisiana. (Doc. 1-2). Since Defendants' removal of this action to this Court, Brown has insisted that Defendants engaged in "legal malpractice" when representing him on postconviction motions. However, he has commented very little (if at all) on the other claims lodged in his complaint: "fraud, attempted murder, intentional infliction of emotional distress, [and] tyranny. . . ."[13] (Doc. 1-2).

Before a court may dismiss a claim on its own motion, it must employ a fair procedure, which typically means that notice must be given of the Court's intended action. Davoodi v. Austin Indep. Sch. Dist., 755 F.3d 307, 310 (5th Cir. 2014); see also Neitzke v. Williams, 490 U.S. 319,

---

[13] Brown's list of claims appears to be nonexhaustive since the language of the complaint reads, "fraud, attempted murder, intentional infliction of emotional distress, tyranny, *etc.*" (Doc. 1-2) (emphasis added). However, we cannot speculate about any other claims Brown believes are actionable against Defendants. As such, this Court will only consider those claims listed explicitly in Brown's complaint.

328 (permitting dismissal under Federal Rule of Civil Procedure 12(b)(6) of a complaint "which fails to state a claim [that] lacks even an arguable basis in law.").

Two of Brown's five claims require dismissal, even without notice. First, his claim for "attempted murder," presumably under Louisiana's Criminal Code, lies outside this Court's jurisdiction because Brown has no authority to assume the State of Louisiana's prosecutorial power and levy criminal charges against Defendants. LA. REV. STAT. § 16:1(B) ("The district attorneys through the state of their designated assistants . . . shall have charge of every criminal prosecution by the state in his [or her] district, be the representative of the state before the grand juries in his district, and be the legal advisor to the grand juries."). Accordingly, Brown's claim for attempted murder is **DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**. Second, Brown's claim for "tyranny" has no arguable basis in Louisiana law, and therefore, the claim will be **DISMISSED FOR FAILURE TO STATE A CLAIM**.

To summarize, of Brown's original five claims, only those claims for (1) legal malpractice, (2) fraud, and (3) intentional infliction of emotional distress remain. He will be **GRANTED LEAVE TO AMEND** his complaint only for the above state law claims over which this Court may have supplemental jurisdiction. Brown must submit his amendment within fifteen (15) days of this Memorandum Ruling and Order's date.

## IV.    CONCLUSION

For the foregoing reasons, the Court **ADOPTS IN PART** the Magistrate Judge's Report and Recommendation.

**IT IS ORDERED** that Plaintiff's motion to remand for lack of subject matter jurisdiction, (Doc. 6), is **DENIED**.

19

**IT IS FURTHER ORDERED** that each "Motion to Join" for nonparties Damon Causey, Tre'vin Bob, Stephen Young, Russell Guillory, and Kevin Cooley, (Docs. 21, 36-39), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's "Motion to Compel Discovery and for Sanctions Against Defendants," (Doc. 20), "Plaintiff's Second Motion to Compel Discovery and for Sanctions Against Defendants," (Doc. 42), and "Plaintiff's Third Motion to Compel Discovery and for Sanctions Against Defendants," (Doc. 56), are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's "Motion for Partial Summary Judgment," (Doc. 48), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's claim for attempted murder, (Doc. 1-2), is **DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**.

**IT IS FURTHER ORDERED** that Plaintiff's claim for tyranny, (Doc. 1-2), is **DISMISSED FOR FAILURE TO STATE A CLAIM**.

**IT IS FURTHER ORDERED** that Plaintiff is **GRANTED LEAVE TO AMEND** his complaint within **FIFTEEN (15) DAYS** of the date of this Memorandum Ruling and Order, with such amendment limited to the issues set forth in Section III above.

**THUS DONE AND SIGNED** at Alexandria, Louisiana this 21ˢᵗ day of August 2023.

DEE D. DRELL, SENIOR JUDGE
UNITED STATES DISTRICT COURT